IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LADERIOUS BOZEMAN, Administrator of the Estate of Jerome Kirt, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACT. NO. 2:20-cv-640-ECM ) [wo] |
| COUNTY OF ELMORE, *et al.*, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court are a motion to dismiss filed by Defendants Elmore County and the Elmore County Commission ("Elmore County") (doc. 9),[1] a motion to dismiss filed by Defendant Bill Franklin ("Franklin") (doc. 11), and a partial motion to dismiss filed Defendant Aaron Watkins ("Watkins") (doc. 13).

The Plaintiff, Laderious Bozeman, filed a complaint as the Administrator of the Estate of Jerome Kirt ("Kirt"), bringing a 42 U.S.C. § 1983 claim against Watkins for violation of the Fourteenth Amendment of the U.S. Constitution (count one); a 42 U.S.C. § 1983 claim for violation of the Fourteenth Amendment of the U.S. Constitution against Elmore County and Franklin (count two); a state-law negligence and wantonness claim

---

[1] Elmore County and the Elmore County Commission move for dismissal of the Elmore County Commission on the ground that the two defendants are the same entity, so naming them both is redundant. The Plaintiff does not respond to this argument. The Court agrees that naming both entities is redundant and will grant the motion to dismiss as to the Elmore County Commission. *See Newsome v. Lee Cty., Ala.*, 431 F. Supp. 2d 1189, 1192 & n.1 (M.D. Ala. 2006) (finding that Lee County, the Lee County Commission, and the Lee County Commissioners in their official capacities are all the same entity).

against Franklin and Watkins (count three); a state-law wrongful death claim against all Defendants (count four); and a state-law negligent hiring, training, and supervision claim against all Defendants (count five). The Plaintiff has also named fictitious parties as defendants.

Elmore County and Franklin move to dismiss all claims brought against them and Watkins moves to dismiss only the state-law claims brought against him.

Based upon a review of the record and the applicable law, and for the reasons that follow, the motions are due to be GRANTED in part and DENIED in part, and the Court will give the Plaintiff an opportunity to more definitely state some of his claims.

## I.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility

---

[2] The Plaintiff has relied on the standard applicable to a motion to dismiss filed in Alabama state court, but a Rule 12(b)(6) motion filed in federal court is governed by the *Federal Rules of Civil Procedure*. FED. R. CIV. P. 1; *see also Daniel v. Howell*, 2020 WL 7029152, at *3 (M.D. Ala. Nov. 30, 2020).

standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## II. FACTS

The facts as alleged in the complaint are as follows:

On or about August 31, 2018, Kirt became seriously ill while in custody at the Elmore County Jail. The staff at the jail previously had been informed of Kirt's medical history.

Watkins, a Sergeant employed at the jail, did not seek medical attention for Kirt on August 31, but called a family friend, Donnie Palamore ("Palamore"), to pick Kirt up from the jail. Upon arrival at the jail, Palamore found Kirt sick and unable to walk without assistance, so Palamore drove Kirt to the Elmore County Hospital. Once there, Kirt was transported by ambulance to Jackson Hospital. Kirt died upon arrival at Jackson Hospital.

Within count one of the complaint, a claim brought only against Watkins, the Plaintiff alleges that Watkins delayed and refused to obtain needed medical treatment for Kirt. (Doc. 1 ¶19). Count two is brought against Elmore County and Franklin, who is the Sheriff of Elmore County. Within that count, the Plaintiff makes allegations regarding "the Defendants," without differentiating between them. Count two alleges that the Defendants

3

"inadequately funded and staffed the jail to provide medical care to detainees and had a policy or custom of doing same." (Doc. 1 ¶26). Count two also alleges that the Defendants inadequately trained jailers to recognize and respond to medical needs. (*Id.*). The Plaintiff further alleges in count two that the Defendants were aware that the failure to fund an on-site nurse and/or physician, or an on-call nurse and/or physician, meant that jail personnel not otherwise qualified or trained to make medical decisions were making such decisions on a regular basis and that detainees were not receiving necessary medical treatment for serious medical needs. (*Id.* ¶27). According to the allegations of count two, the Defendants knew that the failure to fund on-site medical treatment meant that medical needs would have to be met by taking inmates to outside facilities, however, the failure to appropriate sufficient funds for reasonably expected emergency medical treatment meant that "jail personnel were reluctant to take inmates to outside facilities." (*Id.* ¶28). The complaint further states within count two that the Defendants failed to adequately supervise and monitor staff and jailers. (*Id.* ¶29). The Plaintiff alleges that as a result of the Defendants' actions, Kirt suffered a denial or delay in appropriate treatment which ultimately led to his death. (*Id.* ¶¶29, 31).

## III. DISCUSSION

While three separate motions to dismiss have been filed by the Defendants, the motions raise a few common issues. Therefore, the Court will address together issues raised by multiple Defendants and will separately addresses the Defendants' other grounds for dismissal of the Plaintiff's federal and state-law claims.

### A. Claims Against Fictitious Defendants

The Defendants move to dismiss the fictitious defendants referred to in the complaint. Fictitious-party practice is allowed in federal court under some circumstances. *See Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992). In *Dean*, the Eleventh Circuit held the district court erred by denying the plaintiff's motion to join a "John Doe" defendant before allowing the plaintiff an opportunity to learn the John Doe defendant's name through discovery. *Id.* at 1215. In so-ruling, the court noted a difference between "suing fictitious parties" and "real parties sued under a fictitious name" and held that, where the plaintiff had named "Chief Deputy of the Jefferson County Jail John Doe" as a defendant, the name was specific enough to comport with the requirement of Rule 10 of the *Federal Rules of Civil Procedure* that the pleading name the party. *Id.* at 1215, n.6. The use of "John Doe" was "at the very worst, surplusage." *Id.* Thus, the defendant could have been served with the complaint, despite the use of the "John Doe" title. *Id.*

In this case, the Plaintiff has identified Fictitious Defendants A, B, and C, "whether singular or plural, those employees of Elmore County Jail who were on duty on the occasion made the basis of this suit." (Doc. 1 at 1). This identification does not rise to the level of specificity identified by the Eleventh Circuit. *See Vielma v. Gruler,* 808 F. App'x 872, 880 (11th Cir. 2020) (descriptions ranging in "specificity from the highly generic (e.g., 'a male detective,' 'one of the officers at the hospital,' or 'an FBI Agent') to the ever-so-slightly less generic (e.g., '[a] female white officer about 5 feet 10–11 inches in height' or 'a middle-aged white male [officer]') fell well short of enabling a process server to identify a specific individual"). The fictitious parties are, therefore, due to be DISMISSED with

5

prejudice. *See Daniel v. Howell*, 2020 WL 7029152, at *2 (M.D. Ala. Nov. 30, 2020) (labeling the fictitious Defendants as officers 1, 2, and 3, absent some other unambiguous description, lacks the necessary specificity to qualify under the limited exception to the prohibition on fictitious party practice in federal court).

### B. Federal Claims

A preliminary issue before the Court common to the constitutional claims in this case is the appropriate amendment pursuant to which the Plaintiff seeks relief. The Plaintiff has alleged that he has claims for violation of the Fourteenth Amendment, but the Defendants maintain that the claim should have been brought pursuant to the Eighth Amendment. The complaint alleges that the Defendants acted with deliberate indifference to "the medical needs of detainees such as Mr. Kirt." (Doc. 1 ¶29). The Plaintiff also alleges, however, that Kirt was "in custody at the Elmore County Jail, Wetumpka, Alabama for failure to appear for traffic violations and was due to be released on or about January 2019." (Doc. 1 ¶8). The Defendants cite to the latter allegation as supporting their contention that the Plaintiff's constitutional claim ought to have been brought pursuant to the Eighth Amendment. The Plaintiff does not respond to this argument.

Because both Eighth and Fourteenth Amendment claims are governed by the same deliberate indifference standard, *see Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007), the Court can proceed with its analysis of the motions to dismiss, but the Court will give the Plaintiff an opportunity to file an amended complaint to more definitely state the status of Kirt at the time of the incident in question, and to plead his constitutional claim

under the appropriate constitutional provision, to the extent such amendment would not be futile.

The Court now turns to the grounds for dismissal of the deliberate indifference claims.

*1. Elmore County*

In Alabama, "the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself," and a county's responsibilities "are limited to funding the operation of the jail and to providing facilities to house the jail." *Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998)(quotation and citation omitted). Elmore County contends that there are no non-conclusory allegations in the complaint in this case that any failure in funding constituted deliberate indifference which caused Kirt's death. Elmore County argues that the complaint alleges that a decision made by the jail staff to send Kirt home rather than send him to medical care led to Kirt's death, not a lack of funding.

The Plaintiff responds that the complaint alleges that the Defendants inadequately funded the jail to provide medical care for serious medical conditions, and that the failure to appropriate sufficient funds meant that jail personnel were reluctant to take inmates to outside facilities. (Doc. 1 at ¶29). The complaint alleges that the Defendants established a policy or custom regarding the use of outside medical providers so restrictive that detainees were regularly denied prompt medical care for serious medical conditions. (Doc. 1 at ¶25).

Allegations regarding a lack of funding of medical treatment may suffice to state a claim under federal law. *See Gaines v. Choctaw Cty. Comm'n*, 242 F. Supp. 2d 1153, 1161 (S.D. Ala. 2003)(finding an adequately stated claim that the County failed to fund adequate

7

medical care for inmates, causing the decedent to be removed from the hospital prematurely against medical advice and, ultimately, resulting in his death). There is an issue with analyzing the pleading in this case, however, because the complaint alleges a policy of a lack of funding, but also alleges a policy of failing to supervise and train staff in the same count. It is unclear whether these theories are pleaded in the alternative or how they fit with the separate claim against Watkins. By failing to allege facts specific to Elmore County in a separate count, the Plaintiff has not complied with FED. R. CIV. P. 10. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)(characterizing as a shotgun complaint a complaint that violates Rule 10(b) because each count contains factual allegations that could not possibly be material to that specific count and makes no distinctions between defendants). Therefore, the Court will dismiss this claim against Elmore County, but will give the Plaintiff an opportunity to more definitely state his claim. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). Accordingly, the motion to dismiss is due to be GRANTED as to this claim, but the Plaintiff will have the opportunity to re-plead, within the requirements of Rules 8, 10, and 11 of the *Federal Rules of Civil Procedure*, a claim against Elmore County in a separate count.

2. *Franklin*

Franklin invokes qualified immunity as to the Plaintiff's federal claim against him in his individual capacity.[3] Qualified immunity protects government officials from suit if

---

[3] It is unclear whether the Plaintiff intended to sue Franklin in his official capacity, but any federal claim asserted against him in that capacity would be barred by the Eleventh Amendment of the U.S. Constitution, *see Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1527 (11th Cir. 1990), so an amendment to clarify that point would be futile.

8

they are "performing discretionary functions" and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)(internal quotations omitted).

In this case, Franklin contends that because he is not alleged to have personally participated in any constitutional deprivation, the claim against him must be a claim of supervisory liability, which has not been properly alleged.

The standard by which a supervisor can be held liable for the actions of a subordinate is "extremely rigorous." *Piazza v. Jefferson Cty., Alabama*, 923 F.3d 947, 957 (11th Cir. 2019). In *Piazza*, the court explained that because the "complaint contains only conclusory assertions that jail officers were indifferent to Hinkle's needs pursuant to certain policies or customs—without alleging any facts concerning those policies or customs—he has not stated a claim for supervisory liability for deliberate indifference to serious medical needs." *Id.* at 958.

In this case, the Plaintiff conflates multiple policies upon which he relies because all policies are asserted in one count. As with the claim against Elmore County, therefore, the Court concludes that the claim against Franklin must be re-pleaded. *See Vibe Micro*, 878 F.3d at 1296. Therefore, the claim will be dismissed, but the Plaintiff will have the opportunity, within the requirements of Rules 8, 10, and 11 of the *Federal Rules of Civil Procedure*, to allege facts specific to a claim against Franklin in a separate count in an

amended complaint. *See Daniel*, 2020 WL 7029152, at *2 (finding that the shotgun nature of a complaint makes it nearly impossible to conduct any coherent analysis on whether a defendant is entitled to qualified immunity concerning the alleged constitutional violations and dismissing the claim without prejudice).

### C. State-Law Claims

*1. Elmore County*

Elmore County argues that the state-law claims against it in counts four and five of the complaint are due to be dismissed because those counts make no mention of any failure to build, maintain, or fund the jail, but instead refer to day-to-day management decisions of the jail, which are not responsibilities of Elmore County.

Count five is a claim of negligent hiring, training, and supervision. The Court agrees that there is no factual or legal basis for holding the county responsible for hiring, training, or supervising staff at the jail. *See Turquitt*, 137 F.3d at 1289 ("Alabama county commissioners have no authority to hire or fire deputies or jailers."). The motion to dismiss, therefore, is due to be GRANTED as to this claim.

As to count four, however, the complaint alleges a state-law wrongful death claim arising from a violation of a constitutional right. Until the Plaintiff has more definitely stated the facts relevant to the constitutional claim regarding Elmore County, the Court cannot discern whether he has stated a plausible claim under count four. Therefore, the Court will dismiss the claim in count four as against Elmore County without prejudice to being re-pleaded.

10

*2. Franklin*

Franklin argues that the state law claims against him are due to be dismissed because as a sheriff, he is an executive officer of the State of Alabama covered by state sovereign immunity.

Alabama law recognizes two categories of immunity: state-agent immunity and sovereign immunity. *LeFrere v. Quezada*, 582 F.3d 1260, 1265–66 (11th Cir. 2009). Sovereign immunity is provided by Article I, § 14 of the Alabama Constitution and prohibits actions against the State. *Id.* It is broader than state-agent immunity because it provides nearly absolute protection from state law claims. *Id.* Sheriffs, as constitutional officers, have sovereign immunity under Alabama law because actions against them are viewed as actions against the State. *Id.* "[U]nder Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." *McMillian v. Johnson,* 101 F.3d 1363, 1365 (11th Cir. 1996); *see also Daniel,* 2020 WL 7029152, at *6 ("[S]tate absolute immunity under Article I, § 14 'applies to state officers sued in either their official or individual capacities for state-law causes of action.'"). Furthermore, in this case, the Plaintiff's state law claims against Franklin are for monetary damages, so none of the limited exceptions to this immunity apply. *See Daniel,* 2020 WL 7029152, at *6, n.6; *see also Parker v. Amerson*, 519 So. 2d 442, 445 (Ala. 1987)(sheriffs are immune from suit except for actions to compel a sheriff to perform duties, ministerial acts, certain injunctions or declaratory relief). Franklin argues that because the only allegations in the complaint concerning him involve the performance of his duties as Sheriff, he is immune.

The Plaintiff contends that discovery is required to develop whether Franklin was performing his job duties at the time of the incident. Although the counts of the complaint conflate claims against Franklin with claims against other Defendants, there are no facts like those in the case cited by the Plaintiff, *Ex parte Haralson*, 853 So. 2d 928 (Ala. 2003), to support an allegation that Franklin was on a personal errand or otherwise working outside of his job duties. The motion to dismiss, therefore, is due to be GRANTED as to the state-law claims against Franklin. *See Newsome v. Lee Cty., Ala.*, 431 F. Supp. 2d 1189, 1207 (M.D. Ala. 2006).

*3. Watkins*

Watkins, like Franklin, claims sovereign immunity from the Plaintiff's state law claims, but he claims jailer immunity pursuant to ALA. CODE § 14-6-1. The Defendants appear to accept that the complaint alleges that Watkins is a jailer, not a sheriff's deputy. *See Benton v. Walker Cty., Alabama*, 2020 WL 1433149, at *10 (N.D. Ala. Mar. 24, 2020)(explaining that jailers working for a sheriff's office are not viewed as an extension of the sheriff).

As the Plaintiff points out, at one time, the law in Alabama was that jailers are not entitled to sovereign immunity. *See LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009). However, the Alabama legislature subsequently amended ALA. CODE § 14-6-1[4] and

---

[4] ALA. CODE § 14-6-1 provides as follows:

> The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting

12

provided sovereign immunity to jailers. *See Dowdell v. Jones*, 2019 WL 1436385, at *8 (M.D. Ala. 2019)("[P]rior to 2011, Alabama courts did not extend sovereign immunity to jailers, thereby causing the Alabama legislature to amend § 14-6-1 to encompass jailers."), *report and recommendation adopted as modified*, 2019 WL 1440286 (M.D. Ala. 2019).

Although Alabama law now provides sovereign immunity to jailers, it is not provided to the full extent that sovereign immunity is applied to sheriffs because the plain language of the jailer immunity statute has two requirements for application of the immunity: acting within the line and scope of duty and acting in compliance with the law. ALA. CODE § 14-6-1. Courts interpreting ALA. CODE § 14-6-1 have concluded that the statute provides sovereign immunity to jailers only if they are complying with criminal statutes, civil statutes, and constitutional standards. *Young v. Myhrer*, 243 F. Supp.3d 1243, 1258 (N.D. Ala. 2017); *Dowdell*, 2019 WL 1436385, at *8. Therefore, "acting within the line and scope of one's duty is not enough to guarantee immunity, as immunity is also conditioned on 'acting in compliance with the law.'" *Benton,* 2020 WL 1433149, at *10 (citation omitted). As explained by the Eleventh Circuit in an unpublished opinion, if a complaint plausibly alleged that officers violated constitutional rights by being deliberately indifferent to serious medical needs, "it necessarily follows it similarly alleged they were

---

for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law.

13

not 'acting in compliance with the law . . . .'" *Foster v. Maloney*, 785 F. App'x 810, 818–19 (11th Cir. 2019).

In this case, Watkins has not moved to dismiss the federal constitutional claim asserted against him, apparently conceding that a plausible claim for a violation of the U.S. Constitution has been stated as against him. Therefore, the Court concludes that Watkins is not entitled to jailer immunity as to state-law claims at this time, as a plausible allegation of a violation of federal constitutional law means that there is also a plausible allegation that he was not acting in compliance with the law for purposes of immunity. *See Foster*, 785 F. App'x at 818–19. Therefore, the jailer immunity ground is unavailing as to counts three and four against Watkins.

With respect to count five, however, Watkins argues that the Plaintiff has not plausibly alleged facts to show that Watkins negligently hired, trained, or supervised another individual. Again, because the claims against all of the Defendants are pleaded together in one count, it is difficult to discern the basis for a separate claim against Watkins. Therefore, the Court will dismiss the claim in count five as against Watkins without prejudice to being re-pleaded.

## IV. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion to Dismiss filed by Defendants Elmore County and the Elmore County Commission (doc. 9) is GRANTED in part and DENIED to the following extent:

a. The Elmore County Commission is DISMISSED with prejudice as a party.

b. Counts two and four of the complaint as against Elmore County are DISMISSED without prejudice to being re-pleaded.

c. Count five of the complaint as against Elmore County is DISMISSED with prejudice.

2. The Motion to Dismiss filed by Defendant Bill Franklin (doc. 11) is GRANTED in part and DENIED in part to the following extent:

    a. Count two against Franklin is DISMISSED without prejudice.

    b. Counts three, four, and five against Franklin are DISMISSED with prejudice.

3. The partial motion to dismiss filed Defendant Aaron Watkins (doc. 13) is DENIED as to counts three and four of the complaint and is GRANTED as to count five, and the claim in count five is DISMISSED without prejudice.

4. The fictitious defendants are DISMISSED with prejudice.

5. The Plaintiff has until **July 28, 2021** to file an amended complaint which is complete unto itself, (M.D. Ala. L.R. 15.1), which complies with FED. R. CIV. P. 8, 10, and 11, and which does the following:

    a. The amended complaint must plead the claims in separate counts, with only the facts specific to those counts contained within each count, as discussed above, regarding the constitutional claims against Elmore County and Franklin, the state-law claim against Elmore County for wrongful death, and the state-law claim against Watkins for negligent hiring, training, and supervision.

b. The amended complaint must more specifically allege the status of the decedent, Kirt, while he was housed at the Elmore County jail at the time of the incident in question, and should cite the appropriate constitutional provision which applies based on that status, as described above.

DONE this 14th day of July, 2021.

    /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE